# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,<br><br>           Plaintiff,<br><br>vs.<br><br>BRANDON HANNA; JASON GROSS; GEORGE GROSS; and CAROL GROSS,<br><br>           Defendants. | Case No.: 2:06-cv-01289-RLH-LRL<br><br>**O R D E R**<br><br>(Motion for Summary Judgment–#37) |

Before the Court is Plaintiff American National Property and Casualty Company's **Renewed Motion for Summary Judgment** (#37), filed August 29, 2007. The Court has also considered Defendant Brandon Hanna's Opposition (#38), filed September 17, 2007, and Plaintiff's Reply (#39), filed October 1, 2007.

## BACKGROUND

**I. Factual History**

This case involves an action for declaratory judgment regarding the applicability of a Homeowners Policy purchased by Defendants George and Carol Gross arising out of two incidents of physical contact between Defendant Jason Gross ("Gross"), the insureds' then-minor

son, and Defendant Brandon Hanna ("Hanna").  The first incident occurred on August 6, 2001, at the TV room of The Sports Club in Henderson, Nevada.  Hanna testified in deposition that he was talking with Gross about Hanna's sister when Gross became upset and walked away.  Gross then came back and kicked Hanna twice in the groin.

The second incident took place two days later on August 8, 2001.  Hanna testified that on this date, Gross was playing in a basketball game.  Hanna was watching from the bench when Gross was substituted out and wanted to sit where Hanna was sitting.  Hanna was reluctant to give up his seat, but eventually did so.  Hanna testified that as he was walking away, Gross threw him onto the ground and may have kicked him as well.  Though Gross denied kicking Hanna, he admitted that he ran after Hanna, grabbed him by his shirt, swung him around, and threw him to the ground.  Thereafter, Gross was charged with battery and pled guilty in the Trial by Peers Program, a juvenile court program, where he received jury duty, community service, and a writing assignment as punishment.

**II. Procedural History**

Hanna instituted a state court action for his personal injuries and received an arbitration award in his favor.  In connection with the arbitration, Plaintiff American National Property and Casualty Company ("ANPAC"), though not a party to the state court action, intervened for the limited purpose of submitting questions to be later used to resolve the issue of insurance coverage.  The Parties agreed that the responses by the arbitrator would have a res judicata or collateral estoppel effect as to the coverage issue.

The arbitrator made the following findings in an award dated September 28, 2006.  Regarding the August 6, 2001, incident, the arbitrator answered "yes" when asked whether Gross struck or kicked Hanna intentionally and maliciously.  The arbitrator then contradictorily answered "yes" to whether Gross accidentally struck or kicked Hanna.  The arbitrator further found that Gross's contact with Hanna was not of the kind that was substantially certain to cause injury and that any injury inflicted on Hanna by Gross was done negligently.  Regarding the August 8, 2001,

AO 72
(Rev. 8/82)

incident, the arbitrator answered "no" when asked whether Gross stuck or kicked Hanna intentionally or maliciously, and answered "yes" to whether the contact was accidental. The arbitrator further found that the contact was not of the kind that was substantially certain to cause injury and that any injury was negligently caused.

Following the arbitrator's initial findings, ANPAC brought the instant litigation seeking a determination of coverage in this Court under diversity jurisdiction. Hanna thereafter brought a summary judgment motion for a determination that there existed coverage under the policy. At that time, the Court found that the arbitration award was contradictory on its face and determined that it would need to weigh the underlying facts to clear the ambiguities, if possible, and denied the motion for summary judgment.

ANPAC now brings a renewed summary judgment motion seeking a declaration that no coverage exists under the policy for the injuries sustained to Hanna. For the following reasons, the Court finds that coverage is afforded under the policy arising from the August 8, 2001, incident.

## DISCUSSION

**I. Summary Judgment Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and draw all inferences in the light most favorable to the non-moving party. *Blanck v. Hager*, 360 F. Supp. 2d 1137, 1148 (D. Nev. 2005) (citations omitted).

In response to a properly submitted summary judgment motion, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002). The non-moving party

1  "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or
2  admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosp., Inc.*, 929
3  F.2d 1404, 1409 (9th Cir. 1991).
4  **II. Determination of Coverage**
5      **A. Interpretation of Insurance Contracts**
6      Nevada law is guided by well-settled principles of insurance contract interpretation.
7  The interpretation of an insurance contract is a question of law. *Farmers Ins. Exch. v. Neal*, 64
8  P.3d 472, 473 (Nev. 2003). Coverages are to be construed broadly, while limitations and
9  exclusions are to be construed narrowly. *Cranmore v. Unumprovident Corp.*, 430 F. Supp.2d
10 1143, 1149 (D. Nev. 2006) (interpreting Nevada law). Policies are construed from the perspective
11 of a layman rather than from "one trained in the law" and absent ambiguity, terms are to be given
12 their plain and ordinary meaning. *McDaniel v. Sierra Health & Life Ins. Co.*, 53 P.3d 904, 906
13 (Nev. 2002). An ambiguity exists when a policy provision is subject to two or more reasonable
14 interpretations. *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 604 (Nev. 1992).
15 If the ambiguity cannot be resolved, the contract is to be construed against the insurer and in favor
16 of the insured. *Estate of Delmue v. Allstate Ins. Co.*, 936 P.2d 326, 328 (Nev. 1997).
17     Hanna argues that the arbitrator's conflicting answers creates an ambiguity such
18 that the policy should be construed in his favor. However, the ambiguity does not arise from the
19 terms of the policy but rather from the arbitrator's interpretation of the facts. Consequently, the
20 Court does not construe the policy against ANPAC in favor of coverage based on ambiguity.
21     **B. Coverage**
22     Section II–Liability Coverages of the Homeowners Policy issued to George and
23 Carol Gross provides that coverage for "all sums for which any insured is legally liable because of
24 bodily injury . . . caused by an occurrence covered by this policy." The Parties dispute whether
25 there was an "occurrence," defined as an "accident" under the policy. When left undefined in an
26 insurance policy, the term accident has been interpreted as "a happening that is not expected,

foreseen, or intended." *Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 276 (2004) (*citing Webster's New World Dictionary* 8 (3d ed. 1999)).

### 1. First Incident–August 6, 2001

The arbitrator found that on August 6, 2001, Gross both intentionally and accidentally struck or kicked Hanna. Due to the conflicting nature of the findings and because neither Party has requested to set aside the arbitration award or remand for clarification, the Court must look to the underlying facts to determine coverage. To prove that Gross's conduct was intentional and not covered under the policy, ANPAC submits the deposition testimony of Hanna, who testified that on the day of the incident he told Gross that his sister did not like him, that Gross got mad and walked away, only to come back and kick Hanna twice in the groin. ANPAC argues that the fact that Gross kicked Hanna twice indicates the intentional nature of his conduct.

To rebut, Hanna argues that the deposition testimony is irrelevant because the Court is bound to the arbitrator's findings. But Hanna's argument ignores the Court's earlier concerns that it cannot determine liability from the arbitration award. Due to the contradictory findings of the arbitrator that the Gross's conduct was both intentional and accidental, the Court finds the underlying deposition testimony highly relevant in determining coverage and interpreting the award. Hanna presents no evidence indicating that Gross's conduct was either accidental or negligent. Hanna's testimony that Gross turned around after walking away from Hanna to kick him not once but twice indicates that Gross's kicking of Hanna was not accidental. The Court can only interpret the arbitration award as meaning that while Gross intended to kick Hanna, the extent of the injuries were either accidental or negligent.

Because the act causing the harm was intentional, despite the unintended consequences, coverage is precluded under the policy. *Beckwith*, 83 P.3d at 277. In *Beckwith*, the Nevada Supreme Court distinguished between an intended act and an intended consequence, finding that it is the act itself that determines coverage. *Id.* The court found that the intentional act of striking another was not an occurrence under the insurance policy even if the harm caused

was not intended. *Id.* The same facts are presented here. Though Gross may not have intended to hurt Hanna, he intentionally struck him, thereby precluding coverage under the policy.

### 2. Second Incident—August 8, 2001

Regarding the second incident, the arbitrator's answers to the proposed questions are not contradictory like with the first incident. The arbitrator found that Gross's conduct on this day was neither intentional nor malicious and further that it was accidental. Accordingly, it constitutes an occurrence under the policy.

ANPAC argues that should the incident constitute an occurrence, two exceptions apply to exclude coverage. These exceptions exclude coverage for intentional acts and criminal acts. However, the arbitrator's findings relating to this incident that Gross accidentally, and not intentionally, caused Hanna's harm are consistent and thus the Court has no basis on which to review the underlying facts. Because the arbitrator found Gross's conduct to be non-intentional, non-malicious, and accidental, a finding that either the intentional acts or criminal acts exception applies would contradict such a finding. Though the underlying facts presented by ANPAC appear to wholly contradict the arbitrator's findings, ANPAC agreed to be bound by them for purposes of insurance coverage, and an arbitration award cannot be set aside for even serious mistakes of fact. *See Health Plan of Nev., Inc. v. Rainbow Medical, LLC*, 100 P.3d 172 (Nev. 2004); 4 Am. Jur. 2d Alternative Dispute Resolution § 206.

Accordingly, the Court finds coverage for the August 8, 2001, incident.

/ /
/ /
/ /
/ /
/ /
/ /
/ /

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#37) is GRANTED in part and DENIED in part as follows:

- GRANTED as to the August 6, 2001, incident.
- DENIED as to the August 8, 2001, incident.

Dated: March 6, 2008.

_____
ROGER L. HUNT
Chief United States District Judge

AO 72
(Rev. 8/82)